IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

ULUAMA NIUTUPUIVAHA and LUISA )     CIVIL NO. 13-00172 LEK-KSC
NIUTUPUIVAHA,                  )
                               )
          Plaintiffs,          )
                               )
     vs.                       )
                               )
WELLS FARGO BANK, N.A.;        )
COUNTRYWIDE HOME LOANS, INC.,  )
BANK OF AMERICA; CHASE BANK;   )
MORTGAGE ELECTRONIC            )
REGISTRATION SYSTEMS, INC.;    )
NEWYORK, RASC SERIES, TRUST    )
HOME EQUITY MORTGAGE and DOES  )
1-100,                         )
                               )
          Defendants.          )
_____)

**ORDER GRANTING DEFENDANTS WELLS FARGO BANK AND
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S
MOTION TO DISMISS COMPLAINT**

On April 19, 2013, Defendants Wells Fargo Bank ("Wells

Fargo") and Mortgage Electronic Registration Systems, Inc.

("MERS", collectively "Moving Defendants") filed the instant

Motion to Dismiss Complaint ("Motion").  [Dkt. no. 7.]

Plaintiffs Uluama Niutupuihava and Luisa Niutupuivaha

("Plaintiffs") filed their memorandum in opposition on May 24,

2013, and Moving Defendants filed their reply on June 3, 2013.

[Dkt. nos. 22, 24.]  This matter came on for hearing on June 17,

2013.  Appearing on behalf of Moving Defendants were Audrey M.

Yap, Esq., and Carol A. Eblen, Esq.  Appearing on behalf of

Plaintiffs was Jared A. Washkowitz, Esq.  After careful

consideration of the Motion, supporting and opposing memoranda, and the arguments of counsel, Moving Defendants' Motion is HEREBY GRANTED for the reasons set forth below.

## BACKGROUND

Plaintiffs, who were proceeding pro se at the time, filed their Complaint in the instant action on December 31, 2012 in the Circuit Court of the First Circuit, State of Hawai'i as Civil no. 12-1-3325-12, against Defendants Wells Fargo, Country Wide Home Loans, Inc. ("Countrywide"), Bank of America, Chase Bank, MERS, and New York, Rasc Series, Trust Home Equity Mortgage (all collectively "Defendants"). [Notice of Removal, Exh. A (Complaint).] Moving Defendants removed the action to this district court on April 12, 2013 based on diversity jurisdiction. The other Defendants were not served and did not join in the Notice of Removal. [Notice of Removal ¶¶ 5-6.]

According to the Complaint, in 1997, Plaintiffs purchased their residence, 56-345 Kekauoha Street, Kahuku, Hawai'i ("the Property").[1] The deed to the Property was recorded on December 23, 1997 as Document Number 2427961 on Certificate Number 502,813. [Complaint at ¶ 2, Exh. A.] Plaintiffs obtained two mortgage loans from Countrywide for a total of $400,000. [Id. at ¶ 2.]

---

[1] Although the Complaint refers to "Kahuka, HI", [Complaint at ¶ 2,] this appears to be a typographical error.

2

Plaintiffs allege that Countrywide gave them subprime loans that Countrywide approved without verifying Plaintiffs' incomes or whether they could repay the loans in question. Plaintiffs allege that Countrywide led them to be unaware of the actual terms of the loans, including their unfair and excessive interest rates, or the fact that the other Defendants obtained beneficial interests in the Property. [<u>Id.</u> at ¶¶ 2-4.] Plaintiffs claim that they did not have any knowledge of the other Defendants or of the fact that the loans were bought, transferred, and assigned from Countrywide to other Defendants and then finally to Wells Fargo.  Plaintiffs only learned of the other Defendants after receiving notice of Wells Fargo's non-judicial foreclosure sale of the Property.  Plaintiffs allege that the transfers of the loans among the various Defendants were all conducted through illegal actions, and therefore the foreclosure was invalid. [<u>Id.</u> at ¶¶ 5-6.] Plaintiffs specifically state, "the securitization of Plaintiff's [sic] mortgages separated the promissory notes from the mortgages and those actions were not timely or properly done rendering them unenforceable and void with regards to the foreclosure." [<u>Id.</u> at ¶ 24.] Plaintiffs assert that they are entitled to enjoin any sale of the Property or ejectment from their home, until this Court rules on the quiet title claim and determines the rights of the parties. [<u>Id.</u> at ¶ 7.]

Plaintiffs also assert that, when they took out the loans, Countrywide and other Defendants represented to Plaintiffs that the equity in their home would increase and that they could always refinance the Property.  After Plaintiffs received the default notice, Wells Fargo made the same representations that Plaintiffs could buy back or refinance the Property because Plaintiffs had previously reduced the amount owed by $270,000. Plaintiffs allege that these representations were untrue, as Wells Fargo refused to allow Plaintiffs to buy back or refinance the Property in 2011.  [Id. at ¶ 14.]

In addition, Plaintiffs allege that, at all times, they performed the duties that the promissory notes and mortgages required of them, including making the monthly payments. Plaintiffs claim that Defendants were the breaching party as they

> fail[ed] to provide the Plaintiffs with proof of the correct party for them to make their payments[,] . . . .
>
> . . . failed [to] comply with the representations made in the loans as stated in the complaint, failed to give Plaintiff [sic] the required disclosures, failed to provide loan relief and modification of loan terms so Plaintiffs could maintain their home, and failed tor [sic] advise them that the values of their property would fall and not go up, so they would be unable to refinance their loan and therefore could lose their home to foreclosure.

[Id. at ¶¶ 20-21.]

Plaintiffs allege the following claims: (1) quiet title against Defendants ("Count I"); (2) wrongful sale of

4

property against Wells Fargo ("Count II"); (3) fraud against

Defendants ("Count III"); (4) predatory loan against Defendants

("Count IV"); (5) breach of contract against Defendants

("Count V"); and (6) improper securitization[2] against Wells

Fargo ("Count VI").

Plaintiffs seek the following relief: a declaratory

judgment that Plaintiffs are entitled to the Property; an order

vacating the foreclosure; general damages of $400,000; an award

of $50,000 for violating the Hawai'i Revised Statutes; and an

award of fees and costs.  [Id. at pg. 7.]

## I.   Motion

In the instant Motion, Moving Defendants ask the Court

to dismiss the Complaint in its entirety.  As to Count I, Moving

Defendants contend that Plaintiffs have not alleged sufficient

facts to state a cognizable claim for quiet title.  Moving

Defendants note that Plaintiffs alleged that the foreclosure was

invalid because Defendants did not have possession of valid

assignments or the original promissory notes.  [Mem. in Supp. of

Motion at 4.]  Moving Defendants, however, argue that, pursuant

to Pascual v. Aurora Loan Services, LLC, Civil No. 10-00759 JMS-

---

[2] Although Plaintiffs titled Count VI "violation of pooling
and securitization", Count VI only addresses the securitization
process, not a violation of a pooling and services agreement
("PSA"), as other plaintiffs in similar cases have alleged.
Moving Defendants, however, apparently believe Plaintiffs are
arguing a violation of the PSA.

KSC, 2012 WL 3583530, at *5 (D. Hawai'i Aug. 20, 2012), a party initiating a non-judicial foreclosure is not required to possess the original note.  Defendants also argue that Plaintiffs have not provided any evidence establishing their superior title. For example, Moving Defendants note that Plaintiffs have not stated their ability to tender the outstanding indebtedness. [Id. at 5.]

Moving Defendants also argue that Count II of the Complaint fails because, pursuant to Doran v. Wells Fargo Bank, Civil No. 11-00132 LEK-KSC, 2011 WL 5239738, at *9 (D. Hawai'i Oct. 31, 2011), "Plaintiffs have not alleged specific facts to support their allegation that the sale was wrongful and have not identified any procedural errors in the foreclosure process itself that would make the foreclosure 'wrongful.'"  [Id. at 6.]

As to Count III, Moving Defendants argue that Plaintiffs' fraud claim fails because Plaintiffs neither plead the claim with the requisite particularity nor allege specific facts establishing that they actually relied upon the assignments to their detriment.  Moving Defendants therefore argue that Count III does not meet Fed. R. Civ. P. 9(b)'s heightened pleading standards.  [Id. at 7-8.]

As to Count IV, Moving Defendants contend that Plaintiffs' claim fails because Hawai'i courts do not recognize a common law cause of action for predatory lending.  [Id. at 8.]

6

As to Count V, Moving Defendants argue that Plaintiffs fail to state a claim for breach of contract because Plaintiffs "fail[ed] to identify the contract at issue or the particular provision of the contract allegedly violated by the Defendants." [Id. at 10.]  Moving Defendants therefore urge the Court to dismiss Count V for failure to comply with Fed. R. Civ. P. 8 and Fed. R. Civ. P. 12(b)(6).  [Id.]

Finally, as to Count VI, Defendants maintain that this claim is "a variation of the discredited theory that securitization of a mortgage renders the underlying note unenforceable" or alters the rights of the original parties. [Id.]

## II.  **Plaintiffs' Opposition**

In their memorandum in opposition, Plaintiffs argue that the Complaint satisfies Rule 8 because the facts alleged are sufficient to put Defendants on notice of the claims against them.  Plaintiffs further argue that Count III fulfills Rule 9(b) because Plaintiffs sufficiently describe the "who, what, when and where of the alleged fraudulent conduct."  [Mem. in Opp. at 3.]

As to Count I, Plaintiffs identify paragraph 8 of the Complaint as disputing Moving Defendants' argument that the Complaint fails to address Plaintiffs' ability to tender.  [Id. at 7.]  Paragraph 8 of the Complaint states, "Plaintiffs

7

are . . . the owners and entitled to possession of the subject real property, and have at all times herein been willing and able to continue paying to the proper party beneficiary, or paying off any valid outstanding balance or obligations secured on the property." [Complaint at ¶ 8.]

As to Count II, Plaintiffs argue that the cause of action for wrongful sale of property can also be interpreted as a wrongful foreclosure claim. Plaintiffs rely on <u>Nottage v. Bank of New York Mellon</u>, Civil No. 12-00418 JMS/BMK, 2012 WL 5305506 (D. Hawai'i Oct. 25, 2012), and argue that, like the defendants in <u>Nottage</u>, Moving Defendants' participation in a non-judicial foreclosure sale without the valid assignments or promissory notes supports a wrongful foreclosure claim that is sufficient to survive a motion to dismiss. [Mem. in Opp. at 7.]

As to Moving Defendants' argument that <u>Doran</u>, 2011 WL 5239738, at *9, controls this case, Plaintiffs argue that <u>Doran</u> is distinguishable. Plaintiffs claim that, the Court in <u>Doran</u> "held that the loan modification process does not invalidate an otherwise valid foreclosure[,]" whereas in this case, "the foreclosure was procedurally deficient because the foreclosing entity did not have a valid assignment of the mortgage." [<u>Id.</u> at 7-8.]

As to Count IV, Plaintiffs agree with Moving Defendants that Hawai'i courts do not recognize a predatory loan

cause of action and that a single allegation that Defendants knew that Plaintiffs would be unable to repay the loans could not withstand a motion to dismiss.  Plaintiffs, however, contend that the facts alleged in Count IV include much more than a mere allegation that Defendants had this knowledge before they made the loans to Plaintiffs.  Plaintiffs maintain that these factual allegations also provide a basis for an Unfair and Deceptive Acts and Practices ("UDAP") claim under Haw. Rev. Stat. § 480-2. [Id. at 9.]

As to Count V,[3] Plaintiffs reiterate that the allegations clearly put Defendants on notice.  In particular, "[t]he Complaint alleges that Defendants breached the promissory note [sic] by failing to provide Plaintiffs the correct identity of the party to whom payments were to be made.  This allegation alone satisfies the pleading requirements for a breach of contract claim."  [Id. at 10.]

As to Count VI,[4] Plaintiffs agree with Moving Defendants that the claim is not stated with sufficient specificity however, Plaintiffs "request[] leave of court and reasonable time to have a securitization audit performed that

_____

[3] Plaintiffs' memorandum in opposition incorrectly identifies the breach of contract claim as "Count VI".

[4] Plaintiffs' memorandum in opposition incorrectly identifies the "violation of pooling and securitization" claim as "Count VII".

counsel anticipates will establish that Defendants lacked standing to foreclose on" Plaintiffs' Property.  [Id.]

Plaintiffs also request that the Court grant leave to amend if the Court finds any causes of action to be technically deficient.  Plaintiffs argue that, "[i]n most of the cases cited in [the Motion], if dismissal was granted the Court gave [the moving party] 30 days to file an amended pleading."  [Id. at 11 (some citations omitted) (citing Pagano v. One West Bank F.S.B., CV. No. 11-00192 DAE-RLP, 2012 WL 74034 (D. Hawai'i Jan. 10, 2012); Doran, 2011 WL 5239738).]

## III. Defendants' Reply

In their Reply, Moving Defendants reiterate that the Complaint should be dismissed in its entirety.  Moving Defendants claim that Plaintiffs have failed to state a claim for quiet title (Count I), wrongful sale of property (Count II), predatory loan (Count IV), breach of contract (Count V), and improper securitization (Count VI).

As to Count I, Moving Defendants refute Plaintiffs' assertion that they pled their ability to tender the loans proceeds in paragraph 8 of the Complaint by stating that they are able to pay off any "valid outstanding balance[.]"  Moving Defendants argue that it is unclear whether the alleged ability to pay the "valid outstanding balance" refers to "payments in arrears, or to the full amount owed under the note and

mortgage." [Reply at 2.]

As to Count II, Moving Defendants argue that, even if the Court were to accept Plaintiffs' claim that wrongful sale of property is synonymous with wrongful foreclosure, Hawai'i courts have not specifically recognized a common law action for wrongful foreclosure. Moving Defendants also claim that allowing Plaintiffs to assert a wrongful foreclosure claim would be futile because it would be barred by the two-year statute of limitations in Haw. Rev. Stat. § 657-7. [Id. at 4.]

As to Count IV, Moving Defendants argue that, "[e]ven if this Court were to broadly interpret Plaintiffs' predatory loan count as a UDAP claim, Plaintiffs still fail to state a plausible claim for relief." [Id. at 8-9.] Moving Defendants note that this Court has held that, in order for a UDAP claim to withstand a motion to dismiss, the claim must be based on other allegations besides the single allegation that a lender did not consider the borrowers' ability to repay the loan. Moving Defendants also argue that Plaintiffs' purported UDAP claim fails because it is premised upon allegedly fraudulent statements and Plaintiffs failed to comply with the pleading requirements of Fed. R. Civ. P. 9(b). [Id. at 9.]

As to Count V, Moving Defendants argue that Plaintiffs have not identified the specific provision of the promissory notes or mortgages that Defendants allegedly breached, and that

Plaintiffs' memorandum in opposition relies upon other allegations that are not set forth in the Complaint.  [Id. at 10.]

As to Count VI, Moving Defendants interpret Plaintiffs' allegations that Wells Fargo conducted the non-judicial foreclosure in 2010, without valid assignments or promissory notes, as challenging the assignments of the notes and mortgages on grounds that the assignments violated the PSA. Moving Defendants argue that Plaintiffs do not have standing to challenge the validity of the assignments or Wells Fargo's standing to foreclose.  In light of these facts, Moving Defendants urge the Court to dismiss Count VI with prejudice. [Id. at 10-11.]

Moving Defendants also claim that Count III should be dismissed for failing to adequately allege Plaintiffs' fraud claim with the particularity required by Fed. R. Civ. P. 9(b). In particular, Moving Defendants argue that Plaintiffs have failed to differentiate between Defendants and have provided only broad allegations concerning each Defendants' involvement in the alleged fraudulent scheme.  [Id. at 6-7.]  Moving Defendants state that, "[i]n a suit involving multiple defendants, 'a plaintiff must, at a minimum, identify the role of each defendant in the fraudulent scheme.'"  [Id. at 7 (quoting Swartz v. KPMG LLP, 476 F.3d 756, 764-65 (9th Cir.

2007)).]  Moving Defendants also argue that it is unclear how their alleged statements regarding Plaintiffs' future ability to obtain refinancing or buy back the Property can support a fraud claim.  Further, Plaintiffs failed to allege detrimental reliance on Wells Fargo's statement that it had valid assignments and promissory notes to conduct a non-judicial foreclosure.  [Id. at 7-8.]

## STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

> Under Rule 12(b)(6), review is generally limited to the contents of the complaint. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). . . .
>
> On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996).  To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at

554, 127 S. Ct. 1955).

Hawai'i Motorsports Inv., Inc. v. Clayton Group Servs., Inc., 693 F. Supp. 2d 1192, 1195-96 (D. Hawai'i 2010).

This Court, however, notes that the tenet that the court must accept as true all of the allegations contained in the complaint — "is inapplicable to legal conclusions." Iqbal, 129 S. Ct. at 1949.  Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief.  Id. at 1950.

"Dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment."  Harris v. Amgen, Inc., 573 F.3d 728, 737 (9th Cir. 2009) (citation and quotation marks omitted).

Billete v. Deutsche Bank Nat'l Trust Co., Civil No. 13-00061 LEK-KSC, 2013 WL 2367834, at *5-6 (D. Hawai'i May 29, 2013) (quoting Enriquez v. Countrywide Home Loans, FSB, 814 F. Supp. 2d 1042, 1055 (D. Hawai'i 2011) (some citations omitted)).

For fraud-based claims, a motion to dismiss for failure to plead with particularity is "the functional equivalent of a motion to dismiss under Rule 12(b)(6)[.]"  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1107 (9th Cir. 2003).

**DISCUSSION**

I.   **Individual Claims**

A.   **Count I-Quiet Title**

Plaintiffs' quiet title claim against Defendants is based upon allegations that: (1) prior to the foreclosure, the loans were transferred and assigned through illegal actions;

14

(2) Defendants failed to respond to Plaintiffs' requests for confirmation of documents allowing Wells Fargo to foreclose; and (3) Wells Fargo falsely represented that it had valid assignments, promissory notes, and mortgages, and thus, Wells Fargo was not entitled to initiate the non-judicial foreclosure. [Complaint at ¶¶ 5-7.]  Moving Defendants argue that Hawai'i law does not require that the original note be in the possession of the party initiating a non-judicial foreclosure.  [Mem. in Supp. of Motion at 4-5.]  Moving Defendants also argue that either specific allegations demonstrating Plaintiffs' ability to pay or a meaningful description of their attempts to tender payment is needed to state a plausible quiet title claim.  [Reply at 3.]

Haw. Rev. Stat. § 669-1(a) states: "Action may be brought by any person against another person who claims, or who may claim adversely to the plaintiff, an estate or interest in real property, for the purpose of determining the adverse claim."

In <u>Phillips v. Bank of America</u>, this district court noted:

> in order to assert a claim for "quiet title" against a mortgagee, a borrower must allege they have paid, or are able to tender, the amount of indebtedness.  "A basic requirement of an action to quiet title is an allegation that plaintiffs 'are the rightful owners of the property, *i.e.*, that they have satisfied their obligations under the deed of trust.'"  <u>Rosenfeld v. JPMorgan Chase Bank, N.A.</u>, 732 F. Supp. 2d 952, 2010 WL 3155808, at *20 (N.D. Cal. Aug. 9, 2010) (quoting <u>Kelley v. Mortg. Elec. Registration Sys.</u>, 642 F. Supp. 2d 1048, 1057 (N.D. Cal. 2009).  "[A] borrower may

> not assert 'quiet title' against a mortgagee
> without first paying the outstanding debt on the
> property." Id. (applying California law - Miller
> v. Provost, 26 Cal. App. 4th 1703, 1707, 33 Cal.
> Rptr. 2d 288 (1994) ("a mortgagor of real property
> cannot, without paying his debt, quiet his title
> against the mortgagee") (citation omitted), and
> Rivera v. BAC Home Loans Servicing, L.P., 2010 WL
> 2757041, at *8 (N.D. Cal. July 9, 2010)).

Civil No. 10-00551 JMS-KSC, 2011 WL 240813, at *13 (D. Hawai'i

Jan. 21, 2011) (alteration in Phillips).

> More recently, this district court has stated:

> > a quiet title claim against a mortgagee (or
> > purported servicer for the mortgagee) requires an
> > allegation that Plaintiffs "ha[ve] paid, or [are]
> > able to tender, the amount of indebtedness."
> > [Fed. Nat'l Mortg. Ass'n v.] Kamakau, [Civil No.
> > 11-00475 JMS/BMK] 2012 WL 622169, at *9 [(D.
> > Hawai'i Feb. 23, 2012)] ("A basic requirement of
> > an action to quiet title is an allegation that
> > plaintiffs are the rightful owners of the
> > property, i.e., that they have satisfied their
> > obligations under the [note and mortgage]")
> > (internal quotations marks and citation omitted).
> > Many cases from this district and elsewhere rely
> > on this rule requiring a plaintiff "to establish
> > his superior title by showing the strength of his
> > title as opposed to merely attacking the title of
> > the defendant." Amina v. Bank of N.Y. Mellon,
> > 2012 WL 3283513, at *3 (D. Haw. Aug. 9, 2012)
> > (citing cases).

Klohs v. Wells Fargo Bank, N.A., 901 F. Supp. 2d 1253, 1262-63

(D. Hawai'i 2012) (footnote omitted) (some alterations in Klohs).

The district court in Klohs also stated:

> > Amina v. Bank of New York Mellon, 2012 WL 3283513
> > (D. Haw. Aug. 9, 2012), explained that the tender
> > requirement does not apply "where the borrower
> > brings a quiet title claim against a party who,
> > according to the allegations in the Complaint
> > (which the court accepts as true), is not a

mortgagee and who otherwise has no interest in the property whatsoever." Id. at *4.  This exception, however, does not apply here, where Plaintiffs are "seek[ing] a declaratory judgment that [Wells Fargo], who falsely claims to be the servicer despite that the Trust into which the Note and Mortgage were sold has dissolved[.]"  Doc. No. 18, Pls.' Opp'n at 7.  Plaintiffs are asserting that Wells Fargo's status as a servicer for a mortgage is invalid, and thus the tender requirement applies.  Id. at *5 ("To be clear, . . . , this is not a case where Plaintiffs assert that Defendant's mortgagee status is invalid (for example, because the mortgage loan was securitized or because Defendant does not hold the note).").  If Plaintiffs' theory is that its title is superior to that of Wells Fargo's "cloud on title" (a purported right to foreclose), then Plaintiffs are required to allege an ability to tender the outstanding loan obligation.

     For this reason, it also makes no difference if Count Two is construed as being brought under common law (as opposed to HRS § 669-1).  Tender is required here "regardless of whether the claim is based on common law or statute."  Benoist [v. U.S. Bank N.A., Civil No. 10-00350 JMS-KSC], 2012 WL 3202180, at *10 [(D. Hawai'i Aug. 3, 2012)].

Id. at 1266 (some alterations in Klohs).  As the district court

did in Klohs, this Court CONCLUDES that Plaintiffs have not

sufficiently pled their ability to tender the outstanding amount

on the loan.  Plaintiffs, therefore, did not state a plausible

quiet title claim, and the defects in Count I are relevant to all

Defendants.  This Court, however, finds that it is arguably

possible for Plaintiffs to cure the defects in Count I by

amendment.  See Harris, 573 F.3d at 737.  This Court GRANTS

Moving Defendants' Motion as to Count I, and DISMISSES Count I

WITHOUT PREJUDICE.

B.    __Count II-Wrongful Sale of Property__

          Plaintiffs' wrongful sale of property claim against

Wells Fargo is based upon the same allegations as Plaintiffs'

quiet title claim.  Plaintiffs argue that their wrongful sale of

property claim is synonymous with a wrongful foreclosure claim.

[Mem. in Opp. at 7.]  Moving Defendants, however, argue that

Hawai'i courts have not specifically recognized a common law

action for wrongful foreclosure.  [Reply at 4.]

          1.    __Whether a Wrongful Foreclosure Claim__
                __Exists under Hawai'i Law__

          A wrongful foreclosure claim is a state law claim.

Doran, 2011 WL 5239738, at *9 (citing Curiel v. Barclays Capital

Real Estate Inc., Civ. No. S-09-3074 FCD/KJM, 2010 WL 729499, at

*1 (E.D. Cal. Mar. 2, 2010)).  There is no case law from the

Hawai'i state courts addressing whether Hawai'i recognizes this

claim and, if so, what the applicable statute of limitations is.

          Jurisdiction in this case is based on diversity.

[Notice of Removal at ¶ 5.]  When a federal court sits in

diversity, "[i]n the absence of a governing state decision, a

federal court attempts to predict how the highest state court

would decide the issue, using intermediate appellate court

decisions, decisions from other jurisdictions, statutes,

treatises, and restatements as guidance."  Evanston Ins. Co. v.

Nagano, 891 F. Supp. 2d 1179, 1189 (D. Hawai'i 2012) (some

citations omitted) (citing Trishan Air, Inc. v. Fed. Ins. Co.,

635 F.3d 422, 427 (9th Cir. 2011)).  This Court has recognized that, although Hawai'i has not specifically recognized a common law wrongful foreclosure cause of action, there are circumstances when a wrongful foreclosure claim may exist under Hawai'i law. For example, a wrongful foreclosure claim may exist where the foreclosure process failed to comply with Haw. Rev. Stat. Chapter 667 because the foreclosing party allegedly failed to provide the required notices or where the foreclosure was allegedly invalid because the entity that purportedly assigned the foreclosing party its interest in the subject loan was dissolved prior to executing the assignment.  See Swartz v. City Mortg., Inc., 911 F. Supp. 2d 916, 947 (D. Hawai'i 2012) (quoting Matsumura v. Bank of Am., N.A., CIV. No. 11-00608 JMS-BMK, 2012 WL 463933, at *3 (D. Hawai'i Feb. 10, 2012)); Billete, 2013 WL 2367834, at *7. This Court therefore rejects Moving Defendants' argument that Count II fails as a matter of law because the Hawai'i courts do not recognize a wrongful foreclosure cause of action.

### 2.   Whether Count II States a Plausible Claim

In Matsumura v. Bank of America, N.A., this district court explained that a wrongful foreclosure claim will not lie where the foreclosing party properly provided all required notices.

> Initially, Plaintiffs have not identified any procedural errors in the foreclosure process itself that would make the foreclosure "wrongful." See Doran v. Wells Fargo Bank, 2011 WL 5239738, at

>*9 (D. Haw. Oct. 31, 2011) (indicating that a
>"wrongful foreclosure" claim failed under Hawaii
>law because the notice of foreclosure was
>procedurally proper under HRS Ch. 667, and "the
>loan modification process did not invalidate the
>notice because an oral promise of a future loan
>modification does not supercede a mortgagee's
>right to sell").  Moreover, although Hawaii has
>not specifically recognized a common law wrongful
>foreclosure cause of action, "[s]ubstantive
>wrongful foreclosure claims [in other
>jurisdictions] typically are available after
>foreclosure and are premised on allegations that
>the borrower was not in default, or on procedural
>issues that resulted in damages to the borrower."
>Cervantes v. Countrywide Home Loans, 656 F.3d
>1034, 1043 (9th Cir. 2011). . . .

CIV. No. 11-00608 JMS-BMK, 2012 WL 463933, at *3 (D. Hawai'i Feb.

10, 2012).  In the instant case, Plaintiffs have not alleged that

Wells Fargo failed to comply with any of the Chapter 667

requirements.

This district court has also held in Nottage that the

mortgagee's failure to provide evidence of a promissory note did

not violate Haw. Rev. Stat. § 667-5.  2012 WL 5305506, at *7

(citing Pascual v. Aurora Loan Servs., LLC, Civil No. 10-00759

JMS-KSC, 2012 WL 3583530, at *3 (D. Hawai'i Aug. 20, 2012) ("the

plain language of § 667-5 includes no such requirement [for

mortgagee to produce a note], and reading such requirement into

§ 667-5 would be inconsistent with decisions in other

jurisdictions that have refused to read a 'show me the note'

requirement into non judicial foreclosure statutes that do not

otherwise explicitly include such a requirement")).

Further, this Court has also held that, as a general rule, a borrower's allegations of improper securitization and improper foreclosure and ejectment fail because third parties lack standing to raise a violation of the PSA.  Billete, 2013 WL 2367834, at *7.  In Nottage, however, this district court denied the defendant's motion to dismiss where the complaint asserted that, at the time of the assignment, the assignor no longer existed because it had been acquired by another entity.  2012 WL 5305506, at *4.  Similarly, in Billete, this Court refused to dismiss the plaintiffs' claim that the assignment, subsequent foreclosure, and ejectment were invalid because the complaint alleged that the execution of the assignment occurred approximately six months after the assignor's dissolution.  2013 WL 2367834, at *7.  Unlike Nottage and Billete, Plaintiffs fail to provide any factual allegations to support a claim that the entity assigning Wells Fargo its interest in Plaintiffs' loans did not exist or otherwise lacked standing to assign the loans to Wells Fargo.  Plaintiffs' only factual allegation concerns Wells Fargo's lack of possession of the promissory notes, which does not give rise to a claim that the foreclosure was wrongful or procedurally improper under Haw. Rev. Stat. Chapter 667.

Thus, this Court CONCLUDES that, even if this Court construes Count II as a wrongful foreclosure claim, Count II fails to state a plausible claim for relief, and the defects in

Count II are relevant to all Defendants.  This Court therefore GRANTS Moving Defendants' Motion as to Count II.

### 3.   Dismissal With Prejudice or Without Prejudice

Plaintiffs argue that, if this Court dismisses any of their claims, this Court should dismiss the claims without prejudice and give Plaintiffs time to conduct a securitization audit.  It is arguably possible that Plaintiffs' proposed securitization audit could uncover information similar to the allegations in Nottage or Billete.  Moving Defendants, however, claim that allowing Plaintiffs to amend Count II to assert a wrongful foreclosure claim would be futile because it would be barred by the two-year statute of limitations in Haw. Rev. Stat. § 657-7.  [Reply at 4.]

Section 657-7 states, "[a]ctions for the recovery of compensation for damage or injury to persons or property shall be instituted within two years after the cause of action accrued, and not after, except as provided in section 657-13."  Plaintiffs argue that § 657-7 does not apply, and the applicable statute of limitations is set forth in either Haw. Rev. Stat. § 657-31 or Haw. Rev. Stat. § 657-1.  Section 657-31 states, "[n]o person shall commence an action to recover possession of any lands, or make any entry thereon, unless within twenty years after the right to bring the action first accrued."  Section § 657-1 states:

> The following actions shall be commenced within
> six years next after the cause of action accrued,
> and not after:
>
>> (1) Actions for the recovery of any debt
>> founded upon any contract, obligation, or
>> liability, excepting such as are brought upon
>> the judgment or decree of a court; excepting
>> further that actions for the recovery of any
>> debt founded upon any contract, obligation,
>> or liability made pursuant to chapter 577A
>> shall be governed by chapter 577A;
>>
>> (2) Actions upon judgments or decrees
>> rendered in any court not of record in the
>> State, or, subject to section 657-9, in any
>> court of record in any foreign jurisdiction;
>>
>> (3) Actions for taking or detaining any goods
>> or chattels, including actions in the nature
>> of replevin;
>>
>> (4) Personal actions of any nature whatsoever
>> not specifically covered by the laws of the
>> State.

As set forth *supra* section I.B.1., this Court must

predict how the Hawai'i Supreme Court would decide which statute

of limitations period applies to a wrongful foreclosure claim.

The Hawai'i Supreme Court has stated that the appropriate statute

of limitations period is determined by the nature of the claim or

right alleged in the pleadings, not by the form of the pleadings.

Au v. Au, 63 Haw. 210, 214, 626 P.2d 173, 177 (1981).  This Court

disagrees with Plaintiffs' claim that § 657-31 applies because

§ 657-31 governs claims of adverse possession.  See, e.g.,

Campbell v. Hipawai Corp., 3 Haw. App. 11, 13, 639 P.2d 1119,

1120 (1982) (per curiam).  In determining whether § 657-1 or

23

§ 657-7 applies in the instant case, the question is whether or not Plaintiffs are suing for injuries to persons or damage to property, not whether the action is one of *ex contractu* or *ex delicto*.  See Gomez v. Am. Airlines, Inc., 111 Hawai'i 67, 69, 137 P.3d 381, 383 (Ct. App. 2006) (quoting Yoshizaki v. Hilo Hospital, 50 Haw. 1, 14-16, 924 P.2d 845, 853-54 (1967)). Section 657-7 "has been interpreted to apply to 'claims for damages resulting from *physical* injury to persons or *physical* injury to tangible interests in property.'" Id. at 70, 137 P.3d at 384 (emphases in Gomez) (quoting Au, 63 Haw. at 216, 626 P.2d at 178 (quoting Higa v. Mirikitani, 55 Haw. 167, 169-70 & n.5, 517 P.2d 1, 3 & n.5 (1973))).

In contrast, the Hawai'i Supreme Court has applied § 657-1(1) to "hybrids of tort and contract and which have as their gravamen injury to intangible property interests." Higa, 55 Haw. at 173, 517 P.2d at 5.  In Higa, the Hawai'i Supreme Court examined the issue of what was the applicable statue of limitations for a legal malpractice action which concerned a "*non-physical* injury to an *intangible* interest of the plaintiff- herein the forfeiture through an attorney's alleged neglect of a client's chose in action." Id. at 170, 517 P.2d at 4 (emphases in original) (footnote and citation omitted).  The supreme court reasoned that,

> a claim for legal malpractice is not unlike other
> actions where the interests protected are

intangible in nature and where the tort
limitations period for "damages to person" in HRS
§ 657-7 seemingly apply.  *E.g.*, actions for
invasion of privacy or malicious prosecution.
Unlike these torts, however, the act of legal
malpractice generally arises out of a contractual
relationship between the parties, and hence, in
pleading at least, may often be made to appear as
a breach of contract.  Accordingly, in determining
the timeliness of a complaint for legal
malpractice, troublesome issues arise in choosing
between the tort and contract statutes for the
relevant limitations period.

Id.  The supreme court held that § 657-1(1) was the applicable

statute of limitations, reasoning that:

Although the word "debt" in [§ 657-1(1)] may
connote in ordinary parlance an express
contractual liability, this court has not so
limited its meaning in the past.  See
Schimmelfenning v. Grove Farm Co., 41 Haw. 124,
130-131 (1955) (applying section 657-1(1) to
actions based on implied covenants in a lease);
cf. Kerr v. Hyman Brothers, 6 Haw. 308, 309
(1882).  Moreover, we are persuaded that the words
"obligation" and "liability" in section 657-1(1)
would be rendered meaningless unless read to
encompass actions such as this, which are hybrids
of tort and contract and which have as their
gravamen injury to intangible property interests.
Compare Yoshizaki v. Hilo Hospital, 50 Haw. 150,
433 P.2d 220 (1967).  A narrow reading of section
657-1(1) would thus fail to give effect to the
meaning of these words-a result which transgresses
the basic proposition that "[a] statute should be
so construed as to make it consistent in all its
parts and so that effect may be given to every
section, clause or part of it."  Lyman v. Maguire,
17 Haw. 142, 145 (1905).

Id. at 173, 517 P.2d at 5 (some alterations in Higa).

    Similarly, in Au v. Au, the Hawai'i Supreme Court

examined the issue of what was the applicable statue of

limitations for a claim where a buyer alleged that a seller and a

salesman made fraudulent representations about the property.  63

Haw. 210, 212, 626 P.2d 173, 176 (1981).  The supreme court held

that:

> Although the end result of the fraudulent
> representation was physical injury to appellant's
> tangible interest in property, wherein HRS § 657-7
> would seemingly apply, we believe that the instant
> case falls within the purview of HRS § 657-1(4).
> The nature of this claim is not the physical
> injury to property, rather it is the making of the
> fraudulent representations concerning the
> condition of the home which induced appellant to
> purchase it.  Since fraudulent representations are
> not governed by a specific limitations period, the
> general limitations period set forth in HRS § 657-
> 1(4) applies.

Id. at 216-17, 626 P.2d at 179 (footnote omitted).  Although Au

addressed a fraudulent misrepresentation claim, its analysis is

relevant to the instant case because Plaintiffs are apparently

trying to allege in Count II that, during the foreclosure process

and after the foreclosure sale, Wells Fargo represented to

Plaintiffs that they would be allowed to repurchase the Property.

Plaintiffs apparently allege that, as a result of these

representations, they did not immediately challenge either the

on-going foreclosure process or the completed foreclosure sale.

[Complaint at ¶ 14.]  As in Au, the nature of Count II is not a

physical injury to the Property itself, and therefore § 657-7

does not apply.

Further, like the legal malpractice claim in Mirikitani, Count II alleges a claim that sounds in tort but arises from a contractual relationship between Plaintiffs and Wells Fargo, which, as a result of various assignments, stands in the shoes of Plaintiffs' original lender, Countrywide. Plaintiffs allege that the wrongful foreclosure and impending ejectment caused non-physical injury to their intangible interest in the Property - the forfeiture of their right to challenge the foreclosure. Accord Higa, 55 Haw. at 170, 517 P.2d at 4. Thus, it is arguably possible for Plaintiffs to amend Count II to state a wrongful foreclosure claim that would be governed by Haw. Rev. Stat. § 657-1(1) and not by Haw. Rev. Stat. § 657-7. This Court rejects Moving Defendants' argument that allowing Plaintiffs to amend Count II would be futile because the claim would be barred by § 657-7.[5] In addition, it is arguably possible for Plaintiffs to cure the other defects in Count II by amendment. See Harris, 573 F.3d at 737. This Court therefore DISMISSES Count II WITHOUT PREJUDICE.

---

[5] This Court emphasizes that it is not ruling that Haw. Rev. Stat. § 657-1(1) sets forth the applicable statute of limitations period for **all** wrongful foreclosure claims. This Court rules only that, based upon the factual allegations in the instant case, this Court cannot dismiss Count II with prejudice because it is arguably possible for Plaintiffs to amend Count II to allege a wrongful foreclosure claim that would be governed by § 657-1(1).

C.   **Count III-Fraud**

Plaintiffs' fraud claim against Defendants is based upon allegations that: (1) Countrywide and other Defendants falsely represented to Plaintiffs when they took out the loans that the equity in their home would increase; and (2) Wells Fargo falsely represented that, after the foreclosure sale, Plaintiffs would have the opportunity to buy back the Property or refinance it.  [Complaint at ¶ 14.]

Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

> Rule 9(b) requires that a party make particularized allegations of the circumstances constituting fraud.  See Sanford v. MemberWorks, Inc., 625 F.3d 550, 557–58 (9th Cir. 2010).
>
> In order to sufficiently plead their fraud-based claims, Plaintiffs "must allege the time, place, and content of the fraudulent representation; conclusory allegations do not suffice."  See Shroyer v. New Cingular Wireless Servs., Inc., 622 F.3d 1035, 1042 (9th Cir. 2010) (citation omitted).  "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b); see also Odom v. Microsoft Corp., 486 F.3d 541, 554 (9th Cir. 2007) (en banc) ("[T]he state of mind – or scienter – of the defendants may be alleged generally.") (citation omitted)); Walling v. Beverly Enters., 476 F.2d 393, 397 (9th Cir. 1973) (stating that Rule 9(b) "only requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations" (citations omitted)). . . .

Id. (alteration in Billete).

28

> When there are multiple defendants,
>
> Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.  In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identif[y] the role of [each] defendant[] in the alleged fraudulent scheme.

Swartz v. KPMG LLP, 476 F.3d 756, 764-65 (9th Cir. 2007) (alterations in Swartz) (internal quotation marks and citations omitted); see also Meridian Project Sys., Inc. v. Hardin Constr. Co., 404 F. Supp. 2d 1214, 1226 (E.D. Cal. 2005) ("When fraud claims involve multiple defendants, the complaint must satisfy Rule 9(b) particularity requirements for each defendant." (citations omitted)).

Under Hawai'i law, the elements of a fraud claim are: "(1) false representations made by the defendant; (2) with knowledge of their falsity (or without knowledge of their truth or falsity); (3) in contemplation of plaintiff's reliance upon them; and (4) plaintiff's detrimental reliance."  Miyashiro v. Roehrig, Roehrig, Wilson & Hara, 122 Hawai'i 461, 482-83, 228 P.3d 341, 362-63 (Ct. App. 2010) (citing Hawaii's Thousand Friends v. Anderson, 70 Haw. 276, 286, 768 P.2d 1293, 1301 (1989)).

This Court finds that Plaintiffs have not specifically identified the role of each Defendant in the allegedly

fraudulent scheme, nor have they alleged specific facts
regarding which Defendant or Defendants made false
representations with knowledge of their falsity.  On the
contrary, Plaintiffs only allege that Countrywide and "other
defendants" falsely represented that the Property's equity would
increase and Plaintiffs would be able to refinance their loan or
buy back the Property.  Plaintiffs also allege that Wells Fargo
confirmed these representations.  [Complaint at ¶ 14.]  Even if
this was a sufficient description of the content of
Countrywide's and Wells Fargo's allegedly fraudulent statements,
Plaintiffs do not give any further information about who
allegedly made these statements on behalf of Countrywide or
Wells Fargo, nor Plaintiffs do allege when and where these
statements were made, nor do Plaintiffs allege whether the
statements were made with the requisite knowledge.  Moreover,
the alleged fraudulent statements relate to the value of the
Property and Plaintiffs' future ability to obtain refinancing or
buy back the Property and representations about future events
are not sufficient to support a fraud claim.  See Abubo v. Bank
of New York Mellon, Civil No. 11-00312 JMS-BMK, 2011 WL 6011787,
at *6 (D. Hawai'i Nov. 30, 2011) (citing Pancakes of Haw., Inc.
v. Pomare Props. Corp., 85 Haw. 300, 312, 944 P.2d 97, 109 (Haw.
App. 1997) ("The false representation [for purposes of fraud],
to be actionable, must relate to a past or existing material

fact, and not to the happening of future events.  Generally, fraud cannot be predicated upon statements that are promissory in their nature at the time they are made and that relate to future actions or conduct." (alteration in <u>Abubo</u>) (citation omitted))).  The Complaint also does not allege specific facts asserting that Plaintiffs relied on Defendants' misrepresentations to their detriment.

Accordingly, this Court CONCLUDES that Plaintiffs' fraud claim is not sufficiently pled, and the defects in this claim are relevant to all Defendants.  This Court, however, finds that it is arguably possible for Plaintiffs to cure the defects in Count III by amendment.  <u>See</u> <u>Harris</u>, 573 F.3d at 737.  This Court GRANTS Moving Defendants' Motion as to Count III, and DISMISSES Count III WITHOUT PREJUDICE.

D.  **Count IV-Predatory Lending**

Plaintiffs' predatory lending claim merely alleges that the Defendants took advantage of Plaintiffs by issuing and approving loans without verifying Plaintiffs' incomes or whether they could repay the loans in question.[6]  [Complaint at ¶ 3.] This district court has stated:

> Courts, however, have found that there is no common law claim for "predatory lending."  <u>See</u> <u>Haidar v. BAC Home Loans Servicing, LP</u>, 2010 WL

---

[6] Plaintiffs argue that the Court should construe Count IV as a UDAP claim.  Even construed liberally, however, Count IV does not present a UDAP claim.

> 3259844, at *2 (E.D. Mich. Aug. 18, 2010)
> (agreeing that "there is no cause of action for
> predatory lending"); <u>Pham v. Bank of Am., N.A.</u>,
> 2010 WL 3184263, at *4 (N.D. Cal. Aug. 11, 2010)
> ("There is no common law claim for predatory
> lending").  To the extent such "predatory"
> practices provide a claim for relief, they appear
> to be grounded in another statutory or common-law
> cause of action such as fraud—the term "predatory
> lending" is otherwise too broad.  <u>See</u> <u>Vissuet v.</u>
> <u>Indymac Mortg. Servs.</u>, 2010 WL 1031013, at *3
> (S.D. Cal. Mar. 19, 2010) (dismissing claim for
> "predatory lending" with leave to amend—agreeing
> that the term is expansive and fails to provide
> proper notice, where Defendants "are left to guess
> whether this cause of action is based on an
> alleged violation of federal law, state law,
> common law, or some combination"); <u>see also</u>
> <u>Hambrick v. Bear Stearns Residential Mortg.</u>, 2008
> WL 5132047, at *2 (N.D. Miss. Dec. 5, 2008)
> (dismissing a claim for predatory lending where
> plaintiffs failed to cite any "[state] or
> applicable federal law, precedential or statutory,
> creating a cause of action for 'predatory
> lending.' The court is unaware of any such cause
> of action.").

<u>Phillips v. Bank of Am.</u>, Civil No. 10-00551 JMS-KSC, 2011 WL 240813, at *12, (D. Hawai'i Jan. 21, 2011) (alteration in <u>Phillips</u>).

This Court CONCLUDES that Count IV fails as a matter of law because Hawai'i law does not recognize a predatory lending cause of action, and the defects in Count IV are relevant to all Defendants.  Further, the Court finds that the defects in Count IV cannot be cured by any amendment.  <u>See</u> <u>Harris</u>, 573 F.3d at 737.  This Court therefore GRANTS Moving Defendants' Motion as to Count IV, and DISMISSES Count IV WITH PREJUDICE.

E.   **Count V-Breach of Contract**

Plaintiffs' breach of contract claim alleges that Defendants breached the promissory notes and mortgages by: failing to provide Plaintiffs with proof of the correct party for them to make their payments; failing to give Plaintiffs the required disclosures; failing to modify Plaintiffs' loan; and failing to advise them that the value of the Property would fall and prevent Plaintiffs from refinancing their loan. Plaintiffs claim that they performed all of the duties that the promissory notes and mortgages required of them, including making the monthly payments. [Complaint at ¶¶ 20-21.]

Plaintiffs, however, have failed to identify the particular provision of the contract, or contracts, allegedly violated. This Court has stated:

> To allege breach of contract, the complaint must, at a minimum, cite the contractual provision allegedly violated. See Otani v. State Farm Fire & Cas. Co., 927 F. Supp. 1330, 1335 (D. Haw. 1996) ("Generalized allegations of a contractual breach are not sufficient."). Plaintiff fails to allege even the basic elements of a breach of contract claim, much less factual allegations to support such a claim. See [Ashcroft v.] Iqbal, [556 U.S. 662, 678 (2009)] (stating that Rule 8 requires more than "the-defendant-unlawfully-harmed-me accusation[s]" and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do"). The [Third Amended Complaint] does not identify: (1) the contract at issue, (2) the parties to the contract, (3) whether Plaintiffs performed under the contract, and (4) the particular provision that Defendants allegedly violated. See Rodenhurst v. Bank of America, 773

F. Supp. 2d 886, 898 (D. Haw. 2011). . . .
<u>Billete</u>, 2013 WL 2367834, at *9 (alterations in <u>Billete</u>) (quoting
<u>Valencia v. Carrington Mortg. Servs., LLC</u>, Civil No. 10-00558
LEK-RLP, 2013 WL 375643, at *7 (D. Hawai'i Jan. 29, 2013)).

In the present case, as in <u>Valencia</u>, Plaintiffs'
general allegations in Count V are insufficient to survive a
motion to dismiss, and the defects are relevant to all
Defendants.  This Court, however, finds that it is arguably
possible for Plaintiffs to cure the defects in Count V by
amendment.  <u>See Harris</u>, 573 F.3d at 737.  This Court therefore
GRANTS Moving Defendants' Motion as to Count V, and DISMISSES
Count V WITHOUT PREJUDICE.

**F.   <u>Count VI-Improper Securitization</u>**

Count VI alleges that, "the securitization of
Plaintiff's [sic] mortgages separated the promissory notes from
the mortgages and those actions were not timely or properly done
rendering them unenforceable and void with regards to the
foreclosure."  [Complaint at ¶ 24.]  Plaintiffs acknowledge that
Count VI is not "stated with sufficient specificity."  [Mem. in
Opp. at 10.]  This Court agrees and finds that Count VI fails to
state a claim because securitization, in and of itself, does not
give rise to a cause of action.  <u>See Rodenhurst</u>, 773 F. Supp. 2d
at 898-99 (noting that "courts have uniformly rejected the
argument that securitization of a mortgage loan provides the

34

mortgagor a cause of action" (some citations omitted) (citing Upperman v. Deutsche Bank Nat'l Trust Co., No. 01:10-cv-149, 2010 WL 1610414, at *3 (E.D. Va. Apr. 16, 2010) (rejecting claims because they are based on an "erroneous legal theory that the securitization of a mortgage loan renders a note and corresponding security interest unenforceable and unsecured"))).

This district court has also noted that "securitization and/or transfer of the mortgage and note does not modify the terms of the agreement[.  If] the mortgage expressly provides that it can be sold without notice, . . . the transferee simply obtained the same rights that the transferor had under the mortgage." Velez v. Bank of New York Mellon, Civil No. 10-00468 JMS/KSC, 2011 WL 572523, at *5 (D. Hawai'i Feb. 15, 2011) (citation omitted).  In Rodenhurst, the Court held that the plaintiffs could not maintain a claim that "improper restrictions resulting from securitization leaves the note and mortgage unenforceable."  773 F. Supp. 2d at 899 (quotation marks).

Accordingly, this Court CONCLUDES that Count VI fails as a matter of law, and the defects in this claim are relevant to all Defendants.  Plaintiffs request leave to amend, stating that they intend to conduct a securitization audit, which they anticipate will establish that Wells Fargo lacked standing to foreclose on the Property.  [Mem. in Opp. at 10.]  The Court denies the request, as any information from such an audit would

be relevant to Count II and not Count VI.  See *supra* Discussion section I.B.3.  Further, the Court finds that the defects in Count VI cannot be cured by any amendment.  See <u>Harris</u>, 573 F. 3d at 737.  This Court GRANTS Moving Defendants' Motion as to Count VI, and DISMISSES Count VI WITH PREJUDICE.

## II.  **Leave to Amend**

The Court has granted the Motion as to all counts of the Complaint and dismissed Counts IV and VI with prejudice.  The Court has dismissed Counts I, II, III, and V without prejudice.  Plaintiffs are granted until **August 12, 2013** to file a motion to the magistrate judge which seeks permission to file an amended complaint addressing the deficiencies noted in this Order.  The Court CAUTIONS Plaintiffs that, if they fail to timely file a motion seeking leave to file an amended complaint, the claims which this Court has dismissed without prejudice will be automatically dismissed with prejudice.  Further, if Plaintiffs file an amended complaint pursuant to leave from the magistrate judge, but the amended complaint fails to address the defects identified in this Order, the Court may dismiss such claims with prejudice.  The Court emphasizes that it has not granted Plaintiffs leave to add new parties, claims or theories of liability.  If Plaintiffs wish to add new parties, claims or theories of liability, they must either obtain a stipulation from Moving Defendants or file a separate motion seeking leave to

amend according to the deadlines in the Rule 16 Scheduling Order.

## CONCLUSION

On the basis of the foregoing, Wells Fargo and MERS' Motion to Dismiss Plaintiff's Complaint, filed on April 19, 2013, is HEREBY GRANTED.  The Motion is GRANTED with respect to Counts IV and VI, which are DISMISSED WITH PREJUDICE.  The Motion is GRANTED with respect to Counts I, II, III, and V, which are DISMISSED WITHOUT PREJUDICE.  To the extent that the Court has dismissed some of the counts in the Complaint without prejudice, the Court GRANTS Plaintiffs leave until **August 12, 2013** to submit a motion to the magistrate judge seeking permission to file an amended Complaint consistent with the terms of this Order.

It IS SO ORDERED.

DATED AT HONOLULU, HAWAII, July 22, 2013.



    /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**ULUAMA NIUTUPUIHAVA AND LUISA NIUTUPUIVAHA V. WELLS FARGO BANK, ET AL; CIVIL 13-00172 LEK-KSC; ORDER GRANTING DEFENDANTS WELLS FARGO BANK AND MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S MOTION TO DISMISS COMPLAINT**